1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
2

3

    THE UNITED STATES OF AMERICA      )
4                                     )
                                      )
5   vs.                               )   CR No. 19-10081-IT
                                      )
6                                     )
    ALI KHOSROSHAHIN                  )
7

8

    BEFORE:  THE HONORABLE INDIRA TALWANI
9

10

                              PLEA
11

12

    APPEARANCES:
13

        OFFICE OF THE UNITED STATES ATTORNEY (By: Justin D.
14      O'Connell, AUSA, and Eric Rosen, AUSA), One Courthouse
        Way, Boston, Massachusetts 02210.  On Behalf of the
15      Government.

16      HEDGES & TUMPOSKY, LLP (By: Jessica D. Hedges, Esq.), 50
        Congress Street, Boston, Massachusetts 02109.  On Behalf
17      of the Defendant.

18

19          John Joseph Moakley United States Courthouse
                         Courtroom No. 9
20                       One Courthouse Way
                         Boston, MA 02210
21                  Thursday, June 27, 2019
                         11:00 a.m.
22

23              Cheryl Dahlstrom, RMR, CRR
                   Official Court Reporter
24      John Joseph Moakley United States Courthouse
               One Courthouse Way, Room 3510
25                  Boston, MA 02210
           Mechanical Steno - Transcript by Computer

1                    P R O C E E D I N G S

2          THE CLERK:  U.S. District Court is now in session.

3    The Honorable Judge Indira Talwani presiding.  This is Case No.

4    19-cr-10081, United States v. Ali Khosroshahin.  Will counsel

5    please identify themselves for the record.

6          MR. O'CONNELL:  Good morning, your Honor.  Justin

7    O'Connell and Eric Rosen for the government.

8          THE COURT:  Good morning.

9          MS. HEDGES:  Good morning, your Honor.  Jessica Hedges

11:01 10    for Mr. Khosroshahin.

11          THE COURT:  And if you can help me with the

12    pronunciation of his name.

13          THE DEFENDANT:  Ali Khosroshahin.

14          THE COURT:  Khosroshahin.

15          MS. HEDGES:  Correct.

16          THE COURT:  Thank you.  I understand that Mr.

17    Khosroshahin wants to plead guilty today.

18          MS. HEDGES:  That is correct, your Honor.

19          THE COURT:  So if you could please swear in the

11:01 20    defendant.

21    (Defendant sworn.)

22          THE CLERK:  Please state your name for the record.

23          THE DEFENDANT:  Ali Khosroshahin.

24          THE COURT:  Mr. Khosroshahin, do you understand you're

25    now under oath and that if you answer any of my questions

1    falsely your answers may later be used against you in another

2    prosecution for perjury or making a false statement?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  And you may consult with your counsel at

5    any point during the course of these proceedings.

6              THE DEFENDANT:  Thank you.

7              THE COURT:  Can you state your full name, please.

8              THE DEFENDANT:  Ali Khosroshahin.

9              THE COURT:  How old are you?

11:02 10         THE DEFENDANT:  I'm 49 years old.

11             THE COURT:  What education level have you attained?

12             THE DEFENDANT:  I have a bachelor's degrees in

13   business.

14             THE COURT:  As you stand here today, are you under the

15   influence of any drug or alcoholic beverage of any kind?

16             THE DEFENDANT:  I'm under medication.

17             THE COURT:  Okay.  Is there any -- is the medication

18   that you've taken anything that would affect your ability to

19   understand these proceedings and to testify truthfully?

11:02 20         THE DEFENDANT:  No, your Honor.

21             THE COURT:  Have you received any recent treatment for

22   any mental illnesses or psychological problems of any kind?

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  Have you received a copy of the

25   Indictment, the written charge against you in this case?

1          MS. HEDGES:  Just one moment, your Honor.

2   (Discussion held off the record.)

3          MS. HEDGES:  Yes.  My client would just like to

4   clarify one issue.

5          THE DEFENDANT:  I am in counseling both individually

6   and with my significant other.

7          THE COURT:  Okay.  Is there anything in your treatment

8   or counseling there that would, in your view, affect your

9   ability to understand these proceedings and to testify

11:03 10   truthfully?

11          THE DEFENDANT:  No, no, ma'am.  No, your Honor.

12          THE COURT:  So the Indictment in this case charges you

13   with a violation of 18 U.S.C. Section 1962(d), racketeering

14   conspiracy, on or about 2011 through February 2019.  Have you

15   received a copy of the Indictment?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  It also includes forfeiture allegations.

18          Do you understand the charges?

19          THE DEFENDANT:  Yes, your Honor.

11:04 20          THE COURT:  Do you understand that you're represented

21   by counsel?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Have you fully discussed the charges

24   against you and the facts and circumstances of this case with

25   counsel?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And are you fully satisfied with the

3    counsel, representation, and advice given to you in this case

4    by your attorney?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And to counsel, have you communicated all

7    formal offers from the prosecution to accept a plea on terms

8    and conditions that may be favorable to the accused?

9          MS. HEDGES:  Yes.

11:04 10          THE COURT:  I understand there is a plea agreement in

11   this case.

12          MS. HEDGES:  There is.

13          THE COURT:  There's a further document on the docket.

14   Is there anything that we need to address at sidebar?

15          MS. HEDGES:  No.

16          THE COURT:  Okay.  Did you sign the plea agreement?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  I'm looking at a document dated May 15.

19   It appears to be signed on June 3, 2019.  Is that your

11:05 20   signature?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Did you have an opportunity to read the

23   agreement and discuss it with your lawyer before you signed it?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Do you understand -- does the plea

1     agreement contain all the terms to which you have agreed?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Do you understand the terms of the plea

4     agreement?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  And you've also entered into a cooperation

7     agreement with the U.S. Attorney's Office, is that correct?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Did you sign that agreement?

11:05 10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Did you have an opportunity to read that

12     agreement and discuss it with your lawyer before you signed it?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Does that agreement contain all of the

15     terms to which you have agreed?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  And do you understand the terms of that

18     agreement?

19           THE DEFENDANT:  Yes, your Honor.

11:05 20           THE COURT:  In particular, I do want to make sure you

21     understand that under this agreement the government may

22     recommend a different sentence but that the determination of

23     whether you have provided substantial assistance rests solely

24     in the discretion of the United States Attorney and is not

25     subject to appeal or review?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Okay.  Do you understand that these

3     agreements are the only agreements you have with the United

4     States Government?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Has anyone made any promises or assurances

7     to you that are not in these agreements?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  Has anyone made any threats or pressured

11:06 10     you in any way to persuade you to accept these agreements?

11          THE DEFENDANT:  No, your Honor.

12          THE COURT:  And do you understand that you cannot

13     withdraw your plea if I do not accept the sentencing

14     recommendation?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And you understand that the terms of the

17     plea agreement as to your sentence are merely recommendations,

18     and I can impose a sentence that may be more severe than you

19     anticipate?

11:07 20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And are you pleading guilty today of your

22     own freewill?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you understand the offense to which

25     you're pleading guilty is a felony?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  You understand, if I accept your plea, you

3     will be judged guilty of that offense?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  You understand that by being judged guilty

6     you may lose valuable civil rights including the right to vote

7     in many states, the right to hold public office, the right to

8     serve on a jury, and the right to possess a gun or any kind of

9     firearm or ammunition?

11:07 10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Are you a United States citizen?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Okay.  I'm going to turn to the counsel

14    for the government.  If you could please state the maximum

15    possible penalties provided by law and any applicable mandatory

16    minimums.

17         MR. O'CONNELL:  Yes, your Honor.  The defendant was

18    charged in a one-count Indictment, unsealed on March 12, 2019,

19    with racketeering conspiracy, in violation of Title 18 United

11:08 20   States Code 1962(d).  The maximum penalties for that offense

21    are as follows:  incarceration for 20 years; supervised release

22    for three years; a fine of $250,000, or twice the gross gain or

23    loss from the offense, whichever is greater; a mandatory

24    special assessment of $100; restitution; and forfeiture as

25    applicable.  In the Indictment, there is a specific forfeiture

1   allegation against the defendant, in Paragraph 131.  But the

2   parties' plea agreement, when we get to that, it actually has a

3   lower amount that the parties have agreed to.

4        If your Honor is looking for it, it's in 131, and then

5   there's actually two forfeiture allegations:  one for

6   approximately $356,000, to be split between the defendant and

7   another defendant; and then a $75,000 forfeiture money judgment

8   against this defendant.

9        THE COURT:  And in the plea agreement?

11:09 10        MR. O'CONNELL:  In the plea agreement, the parties

11   have agreed that the amount is $208,990.93.  That's in the plea

12   agreement.  If your Honor had seen, last night a colleague of

13   mine in Asset Forfeiture filed a Bill of Particulars that also

14   stated that some of that money, approximately $4,600, has

15   already been seized from a bank account in the defendant's

16   name.

17        THE COURT:  Okay.  If I could ask you to state the

18   disposition that the government has agreed to recommend under

19   the plea agreement.

11:09 20        MR. O'CONNELL:  Yes, your Honor.  Here the government

21   has agreed to recommend the following sentence:  incarceration

22   at the low end of the guideline calculation range, which here

23   the offense level is a 23, so that would be a 46-month

24   sentence; a fine within the guideline range of 20,000 to

25   $200,000; 12 months of supervised release; a mandatory special

1    assessment of $100; restitution in an amount to be determined

2    by the Court at sentencing; and the forfeiture allegation --

3    the forfeiture, as I stated previously, of a money judgment of

4    208,9 -- let me state that again -- $208,990.93.  And then the

5    Bill of Particulars talks about the forfeiture of the funds in

6    an account at Schools First Federal Credit Union, Account No.

7    5612, that's held in the name of defendant in the amount of

8    $4,664.23.

9            THE COURT:  Okay.  Thank you.  So I'm just going to

11:11 10   speak briefly about the sentencing guidelines.  Under the plea

11    agreement, you and the government have agreed on a base offense

12    level, but I need to independently determine what the correct

13    guideline sentence would be; and, moreover, I am not bound by

14    the sentencing guidelines.

15           So do you understand that I cannot make a

16    determination of your guideline sentence until after the

17    Probation Office has prepared a Presentence Report?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  And do you understand that that

11:11 20   Presentence Report will contain information about you, any

21    criminal history, the crime you committed, and any other

22    uncharged or dismissed conduct?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  And do you understand that I may consider

25    all of this information in applying the sentencing guidelines?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And do you understand that you'll have the

3   opportunity to read the report and to challenge the facts in

4   it, but I need only find these facts to a preponderance of the

5   evidence?  Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And do you understand that, although I'm

8   not required to follow the guidelines, I am required to

9   consider the guideline sentence before I impose a sentence on

11:12 10  you?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  But do you understand I have the authority

13   to depart from the guideline sentence and impose a sentence

14   that is more severe or less severe than what the guidelines

15   call for?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  And so because I'm not required to follow

18   the sentencing guidelines and I am not required to follow the

19   parties' recommendation, I have the legal authority to sentence

11:12 20  you anywhere up to the maximum sentence as long as the sentence

21   that I impose is reasonable under the circumstances; do you

22   understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  And, therefore, do you understand I will

25   have the power to give you a term of imprisonment of up to 20

1  years?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And in addition to a prison term, I will

4  have the power to give you a term of supervised release for up

5  to three years?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And that, if you later violate your

8  conditions of supervised release, you may be given additional

9  time in prison; do you understand that?

11:13 10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And that I will have the power to fine you

12  up to 250,000, or twice the gross gain or loss, whichever is

13  greater, do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  And that you will also be subject to

16  forfeiture as charged in the Indictment or, I guess, as the

17  lower amount in the plea agreement of $208,990, do you

18  understand that?

19          THE DEFENDANT:  Yes, your Honor.

11:13 20          THE COURT:  And in addition to everything else, you

21  will be required to pay a $100 special assessment; do you

22  understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  And do you understand you will not be

25  permitted to withdraw your plea of guilty if your sentence is

1    longer or different than you expected?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  Okay.  Do you understand there may be

4    legal challenges to the charges brought against you, such as

5    challenges to venue here or a motion to suppress evidence or a

6    challenge that there's a legal defect in the Indictment, and

7    you will have waived all such challenges if I accept your plea

8    of guilty?  Do you understand that?

9         THE DEFENDANT:  Yes, your Honor.

11:14 10        THE COURT:  I'm now going to go through your rights to

11   a trial, make sure you understand what you are waiving here.

12   Do you understand you have the right to plead not guilty to the

13   offense charged against you and to go to trial?

14        THE DEFENDANT:  Yes, I do.

15        THE COURT:  You understand you have the right to a

16   trial by jury?

17        THE DEFENDANT:  Yes, I do.

18        THE COURT:  Do you understand that a jury is composed

19   of 12 jurors who must find beyond a reasonable doubt that you

11:14 20   committed the crime with which you are charged before you may

21   be found guilty?

22        THE DEFENDANT:  Yes, your Honor.

23        THE COURT:  And that at trial you would be presumed to

24   be innocent and the government would have to prove your guilt

25   beyond a reasonable doubt?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Do you understand that at trial you would

3      have the right to the assistance of counsel for your defense?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  You understand that you would have the

6      right to see and hear all the witnesses against you and have

7      them cross-examined in your defense?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Do you understand that you would have the

11:15 10    right, if you chose to exercise it, to testify and to put on

11     evidence in your defense?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you understand that you would have the

14     right to require witnesses to come to court to testify in your

15     defense?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Do you understand that you would have the

18     right to refuse to testify and refuse to put on evidence unless

19     you voluntarily elected to do so?

11:15 20         THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand that if you decided not

22     to testify or not to put on any evidence those facts could not

23     be used against you?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Do you further understand that by entering

1    a plea of guilty here today, if I accept your plea, there will

2    be no trial, and you will have waived, or given up, your right

3    to a trial as well as the rights that come with a trial that I

4    have just described?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Okay.  The next thing is that your

7    agreement waives appeal rights, and I want to make sure you

8    understand that waiver.  Do you understand that, but for the

9    terms in your plea agreement, you may have been able to argue

11:16 10   in a future proceeding, collateral or otherwise, that your

11   conviction should be set aside or reduced?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Do you understand that, but for the terms

14   in your plea agreement, any sentence I impose could have been

15   appealed by you on direct appeal or challenged in a future

16   proceeding, collateral or otherwise?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And do you understand that under your

19   agreement you have agreed that you will not challenge any

11:16 20   prison sentence of 57 months or less, is that correct?

21             MS. HEDGES:  Yes.

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Fifty-seven months or less or any court

24   orders relating to forfeiture, restitution, fines or supervised

25   release, do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you understand that this provision is

3    binding even though my guideline analysis may be different than

4    the one in the agreement?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And the United States Attorney has agreed

7    that, regardless of how I calculate the sentence, the United

8    States Attorney will not appeal any sentence of imprisonment of

9    46 months or more.

11:17 10          So what this agreement means is that your conviction

11    and sentence will be final once I issue a written judgment

12    after the sentencing hearing in this case, and you will lose

13    the right to appeal or challenge your conviction and sentence

14    regardless of whether you later change your mind or find new

15    information that would have led you not to agree to give up

16    these rights in the first place; do you understand?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And you, as all defendants, do reserve the

19    right to claim that your lawyer rendered ineffective assistance

11:17 20    of counsel or that the prosecutor engaged in serious

21    misconduct.

22          So with that, let me turn to the factual basis for the

23    charge.  Do you understand that the government would have to

24    prove the following elements if this case were to go to trial:

25    for a conspiracy to commit racketeering, the government would

1    have to prove that there was a pattern of racketeering activity

2    substantially as stated in the Indictment and that it was part

3    of the conspiracy that each defendant agreed that the

4    conspirators would commit at least two acts of racketeering

5    activity and that you conspired to participate in or benefit

6    from the racketeering activity.

7          So with that, let me ask the government to state the

8    factual basis for this plea and what the government would be

9    prepared to prove if the case were to go to trial.

11:18 10         MR. O'CONNELL:  Yes, your Honor.  If this case were to

11    proceed to trial, the evidence would show, through recorded

12    telephone calls, emails, financial records, and witnesses, that

13    the defendant, Ali Khosroshahin, when he was -- when he worked

14    at the University of Southern California as the head women's

15    soccer coach accepted bribe payments from clients of William

16    "Rick" Singer to help secure the children of his clients

17    admission to USC as purported athletic recruits.

18         THE COURT:  What were the dates of when he -- when did

19    he stop working there?

11:19 20         MR. O'CONNELL:  Yes, your Honor.  He worked there from

21    approximately 2007 through 2013.

22         THE COURT:  Okay.

23         MR. O'CONNELL:  After his coaching position at USC

24    ended in 2013, the defendant continued to assist Singer with

25    the admissions scheme by connecting Singer with coaches at

1   other universities who, in exchange for bribe payments, agreed

2   to fraudulently recruit Singer's students as athletic recruits.

3   Both parties of this scheme were implemented through interstate

4   mailings and wires, including, but not limited to, mailing of

5   bribe checks and emails containing fake accolades about

6   purported recruits.

7           With respect to his time at USC, the evidence would

8   show that USC employed the defendant as the head women's soccer

9   coach, like I said, from approximately 2007 through 2013.  In

11:20 10  that capacity, the defendant was responsible for, amongst other

11  things, recruiting athletes to play on the USC soccer team.  In

12  breach of his fiduciary duties to USC, during that time the

13  defendant recruited approximately five students, working with

14  Singer in exchange for bribe payments of at least $200,000.

15          The defendant knew that none of these students played

16  competitive soccer but, nevertheless, agreed to secure their

17  admission in return for the bribes.  Singer paid these bribe

18  payments to private bank accounts held in the name of a private

19  soccer club controlled by the defendant and one of his

11:20 20  assistant coaches, Laura Janke, who has already pled guilty for

21  her role in this scheme.

22          The defendant and Janke, in turn, would split the

23  bribe payments for their permanent use.  By way of example,

24  beginning in 2012, the parent of a child working with Singer,

25  who has been indicted, agreed to pay an amount ultimately

1    totaling 200,000 to secure his daughter's admission to USC as a

2    purported soccer recruit.

3            In or about the fall of 2012 Singer asked the

4    defendant if he would recruit this student in exchange for a

5    bribe payment.  The defendant agreed to do so.  Thereafter,

6    between September and October of 2012, Singer emailed the

7    defendant's assistant coach Janke the types of materials

8    required by the USC Admissions Office for athletic recruits,

9    including high school transcripts and standardized test scores.

11:21 10         On or about February 12, 2013, Singer mailed a $50,000

11    check to the private soccer club controlled by the defendant

12    and Ms. Janke.

13            The following day, on or about February 13, 2013, the

14    defendant emailed the recruitment materials for this student to

15    an athletic department liaison who worked with the USC

16    Admissions Office.  These materials included a sports resume

17    with a narrative from the defendant that falsely claimed that

18    this student "is comfortable on the ball with both feet and

19    plays center midfield.  Her knowledge of the game, awareness

11:22 20    and vision of the field will set her apart from most at the

21    college level.  These qualities are what will make her an asset

22    to our team."

23            THE COURT:  Just so I can understand this relationship

24    here, are you saying that the contacts were occurring between

25    -- or at least in this case, between Mr. Singer and Mr. -- I'm

1    going to do a bad job on your name again -- Khosroshahin -- but

2    that Ms. Janke then prepared the material and Mr. Khosroshahin

3    then sent it forward to the university.

4           MR. O'CONNELL:  That's basically right, your Honor.

5    Ms. Janke also had contacts with Singer, but that's for a

6    different time.  So there were contacts between the defendant

7    here and Singer.  Ms. Janke would oftentimes assist the

8    defendant with preparing the materials necessary to submit to

9    the Admissions Office.  So things such as the transcripts, the

11:23 10   fake profiles that would dress the kids up as athletes that

11   then, in this instance, the defendant caused to be provided to

12   the USC Admissions Office.

13          THE COURT:  Okay.  Thank you.

14          MR. O'CONNELL:  So after the defendant here had sent

15   those materials on to the -- or caused them to be sent on to

16   the USC Admissions Office, the next day, on or about February

17   14, 2013, USC approved the student's admission to the school as

18   a soccer recruit.

19          In or about April 2013, after the student received a

11:24 20   formal acceptance letter from USC, the parent of that student

21   wired $200,000 to Singer.  The following month Singer directed

22   another $50,000 payment from his nonprofit to the private

23   soccer club controlled by the defendant and Janke.

24          With respect to his time after USC -- after his

25   departure, the defendant continued to work with Singer and his

1   organization to facilitate the admission of students through a

2   combination of fraud and bribes.  In this role, the defendant

3   received a cut of the bribe payments for connecting Singer to

4   corrupt coaches at other schools, including at Yale and UCLA.

5   In return for making three such successful connections, the

6   defendant received $75,000 from Singer.  That money went to his

7   personal account, not to the account shared with Ms. Janke.

8          THE COURT:  Was -- those activities did not involve

9   Ms. Janke, is that correct?

11:25 10          MR. O'CONNELL:  They did in some sense, your Honor.

11  She continued, as we've said in her plea hearing, to make fake

12  profiles for some of these students and pass them along, but

13  she was compensated in a different way.

14          By way of example, beginning in or about 2018, the

15  parent of a child working with Singer agreed to pay an amount

16  ultimately totaling $400,000 to secure her son's admission to

17  UCLA as a purported soccer recruit.

18          In or about the summer of 2018, Singer asked the

19  defendant if he could help secure the admission of this student

11:25 20  to UCLA.  Thereafter, Singer emailed the defendant this

21  student's high school transcripts and test scores.

22          On or about September 12, 2018, Singer forwarded a

23  falsified resume, sports resume, for this student to both the

24  defendant and the UCLA soccer coach, who has been charged.  The

25  profile listed various purported soccer achievements and

described the student as a top player for two private clubs.
In reality, the student did not play soccer competitively.
Later that day, in a recorded telephone call, Singer and the
defendant discussed the bribe payments to be made in connection
with this student's admission to UCLA as a soccer recruit.
During that call Singer asked the defendant, "What does the
UCLA coach want?  I mean, what does he want?"  The defendant
replied, "He wants a hundred."  Singer answered, "Done deal.
He'll get a hundred.  You'll get 25."  The defendant responded,
"Thank you, sir."

Shortly thereafter -- I'm sorry.  On or about October
2018 -- October 25, 2015, the parent of a student wired Singer
an initial bribe deposit.  Singer, who was in Massachusetts at
that time, mailed a $100,000 check to the UCLA soccer coach and
a $25,000 check to the defendant.

THE COURT:  When you were describing the email, I
understood you to say that Mr. Singer emailed the defendant a
transcript, but then you described the falsified resume and
soccer profile.  Who prepared that?  And who --

MR. O'CONNELL:  That I believe was Laura Janke that
provided it, but she emailed it -- would email it to Singer,
and then Singer passed it on to the defendant as well as the
UCLA soccer coach in this instance.

THE COURT:  Okay.

MR. O'CONNELL:  So after the money was paid to the

1   defendant and mailed from Massachusetts to his address in

2   California, shortly thereafter, on or about November 5, 2018,

3   UCLA approved the student's admission as a recruited soccer

4   player and awarded that student a 25 percent scholarship from

5   the university.

6           THE COURT:  Thank you.  Just so I understand, so the

7   -- once the defendant had left USC, his role and his -- his

8   role came from his connections to these different people, but

9   he wasn't directly -- he didn't have the direct access that he

11:28 10  had had as a coach, is that correct?

11          MR. O'CONNELL:  He didn't have the discretion to admit

12  the kids to the school, but because of his connections within

13  the soccer community in particular, as well as the larger

14  coaching network, he was able to make connections to Singer.

15  When those connections ended up successfully getting a student

16  in through the side door, the bribery and fraud scheme, then

17  Mr. Khosroshahin -- I apologize -- he would end up getting some

18  of the bribe payments that were paid by those students'

19  families.  In each instance, it was $25,000 that he would get.

11:29 20          THE COURT:  Thank you.

21          Mr. Khosroshahin, do you understand the facts that

22  were just recited by the assistant U.S. attorney?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  And do you agree with the accuracy of

25  those facts?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Briefly, the scheme, as described by the

3     assistant U.S. attorney, had sort of two phases.  In the

4     initial phase, when you were working for USC, the government

5     contends that the evidence would show that you accepted bribe

6     payments to get students on your recruited athlete list at USC

7     and that, in return, checks were written to a private soccer

8     club that you operated.

9          And after 2013, the evidence that the government

11:30 10     states that they would present would show that you were

11     involved in the -- somewhat as an intermediary between Mr.

12     Singer and other coaches and that you would assist him in not

13     just the connections but in some cases the material that was

14     put together and would receive a bribe payment for those as

15     well.  Any disagreement with those facts?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  Are you, in fact, guilty of the count

18     charged?

19          THE DEFENDANT:  Yes, your Honor.

11:31 20          THE COURT:  Counsel, is there any reason the Court

21     should not take the change of plea?

22          MS. HEDGES:  No, your Honor.

23          THE COURT:  So I'll have the clerk take the change of

24     plea.

25          THE CLERK:  You are charged in an Indictment with,

1    Count 1, racketeering conspiracy, all in violation of Title 18

2    United States Code Section 1962(d).  You have previously pled

3    not guilty to this charge.  Do you now wish to change your

4    plea?  Yes or no.

5              THE DEFENDANT:  Yes.

6              THE CLERK:  How do you now plead to Count 1, guilty or

7    not guilty?

8              THE DEFENDANT:  Guilty.

9              THE CLERK:  Thank you.

11:32 10            THE COURT:  The Court finds the defendant is fully

11   competent and capable of entering an informed plea, that he is

12   aware of the nature of the charges and the consequences of the

13   plea, and that the plea of guilty is a knowing and voluntary

14   plea supported by an independent basis in fact, containing each

15   of the essential elements of the offense charged.  The plea is

16   accepted, and the defendant is now judged guilty of this

17   offense.

18              So you may be seated.

19              I'm just going to briefly speak again about the

11:32 20   Presentence Report which will be prepared by the Probation

21   Office to assist me.  You will be asked to give information for

22   that report.  Your attorney may be present if you wish.  It is

23   important that the report is accurate.  It will not only affect

24   what sentence you receive, but it affects what happens to you

25   after you are sentenced.  For example, if you are sent to

1    prison, it will affect where you're sent, what happens to you

2    when you get there.  Even minor mistakes in the report should

3    be corrected.  You'll have the chance to read the report, as

4    will your counsel, and to file objections to it before the time

5    of sentencing.

6          It is my practice to hear a specific sentencing

7    recommendation from the Probation Office, which is not

8    disclosed to the parties.  That recommendation will not

9    consider any facts that are not already included in the

11:33 10    Presentence Report and known to both you and the government.

11          If you have objections to my proceeding that way,

12    please, any such objections should be filed with the court or

13    should be submitted to the courtroom clerk at the same time as

14    any objections to the Presentence Report.  You and your counsel

15    will have the opportunity to speak on your behalf at the time

16    of sentencing.

17          So do we have a date for sentencing?  October 25th at

18    2:15.

19          Is there any objections to Mr. Khosroshahin being

11:34 20    released on the same conditions as previously?

21          MR. O'CONNELL:  No objections, your Honor.

22          THE COURT:  So based on the information provided to me

23    by the Probation Office, I find by clear and convincing

24    evidence that the defendant is not likely to flee or pose a

25    danger to any other person in the community if released pending

1   sentencing and pending sentencing, the defendant will be

2   released pursuant to the agreed-upon conditions.  Violating of

3   those conditions may result in the immediate issuance of a

4   warrant for your arrest, revocation of release, order of

5   detention, forfeiture of bond and prosecution for contempt and

6   could result in imprisonment, fine or both.

7         While on release, if you commit a federal felony, the

8   punishment is an additional prison term of not more than ten

9   years; for a federal misdemeanor, punishment is an additional

11:35 10   prison term of not more than one year.  If, after release, you

11   knowingly fail to appear, you may be prosecuted for failing to

12   appear and additional punishment such as fine or incarceration

13   may be imposed.  So with that, is there anything else we need

14   to do?

15         MR. O'CONNELL:  Nothing, your Honor.

16         MS. HEDGES:  No, your Honor.

17         THE COURT:  See you in October.

18         THE CLERK:  Court is in recess.  All rise.

19   (Whereupon, at 11:35 a.m. the hearing concluded.)

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4           I certify that the foregoing is a correct transcript

5    of the record of proceedings in the above-entitled matter to

6    the best of my skill and ability.

7

8

9

10

11

12    /s/Cheryl Dahlstrom

13    Cheryl Dahlstrom, RMR, CRR

14    Official Court Reporter

15

16    Dated:  July 1, 2019

17

18

19

20

21

22

23

24

25