UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————— )
UNITED STATES OF AMERICA     )
        )
        v.        )     Criminal No. 19-10081-IT
        )
ALI KHOSROSHAHIN,       )     **FILED UNDER SEAL**
        )     **(Leave to File Granted June 21, 2022)**
        Defendant     )
———————————————————— )

### GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO SECTION 5K1.1

The government respectfully submits this sentencing memorandum and motion, pursuant to Section 5K1.1 of the United States Sentencing Guidelines, in connection with the sentencing of defendant Ali Khosroshahin.

Khosroshahin conspired with William "Rick" Singer and his associates, other college coaches and athletics administrators, and parents to purport to recruit unqualified athletes to the University of Southern California ("USC") women's soccer team in exchange for bribes. After he initially facilitated "side door" deals in exchange for payments to the USC soccer team, Khosroshahin then engaged in more deals in exchange for payments to his private soccer club. Then, following his firing by USC, he encouraged additional coaches to join the scheme and received payments when those coaches purported to recruit Singer clients. The government respectfully submits that this conduct places Khosroshahin in the middle of the group of coach defendants as to culpability.

But Khosroshahin's early and complete acceptance of responsibility, genuine remorse, and truthful provision of substantial assistance in the government's investigation sets him apart from those defendants. Taking these factors into account, along with the sentences imposed on related

defendants and the remaining § 3553(a) factors, the government recommends that the defendant be sentenced to time served followed by one year of supervised release, 100 hours of community service, and a forfeiture money judgment of $208,990.93.

## I.    Overview of the Offense Conduct

Khosroshahin was the head women's soccer coach at USC from 2007 to 2013, and during that time, he participated in the athletic recruitment aspect of the charged scheme and conducted several side door deals.  Upon being approached by Singer, Khosroshahin expressed reticence about pretending to recruit unqualified soccer players in exchange for purported donations to the USC soccer program.  But after initially refusing Singer's advances, he joined the scheme at the behest of Singer and USC water polo coach Jovan Vavic.

Once Khosroshahin joined the conspiracy, he solicited the involvement of his assistant coach Laura Janke.  Together, Khosroshahin and Janke purported to recruit one or two of Singer's students to the USC women's soccer team each year—initially in exchange for payments to their USC soccer program, and later, in exchange for payments to their private soccer club. Khosroshahin knew that the students Singer brought him were not legitimate Division I college-level soccer recruits, and he was not actually recruiting any of them to be members of his team. Khosroshahin and Janke received falsified athletic profiles from Singer and his associates—and when Singer did not send one, Khosroshahin and Janke created their own—and then sent those profiles to USC's admissions department (via Donna Heinel), deceiving the admissions department into believing that the students were legitimate soccer recruits.  On some occasions, in addition to the falsified profiles, Khosroshahin sent admissions (via Heinel) phony reasons why he was recruiting one of Singer's clients.  For example, he stated that he was recruiting the daughter of defendant Doug Hodge, who was not a legitimate soccer recruit, because she was "a player that

plays a vital role in helping her team keep possession of the ball."  Once the admissions department approved the admission of the fraudulent recruits, Singer wrote a check to the USC soccer program or Khosroshahin's soccer club, typically from his sham charitable foundation KWF.  In total, Khosroshahin facilitated side door deals for approximately seven students during his USC tenure.

After he was terminated by USC, Khosroshahin continued his involvement in the scheme by encouraging other coaches to work with Singer and receiving payments when he facilitated side door deals through those coaches.  For example, Khosroshahin received $25,000 from Singer, through KWF, for facilitating the fake soccer recruitment of defendant Bruce Isackson's daughter through defendant Jorge Salcedo, the UCLA soccer coach.

## II.    The Applicable Sentencing Guidelines

The government submits, in accordance with the parties' plea agreement, that the defendant's total offense level for racketeering conspiracy under the Sentencing Guidelines is 23. The resulting Guidelines sentencing range is between 46 and 57 months.[1]  Probation has calculated the Guidelines differently, concluding that the default racketeering base offense level of 19 applies because there was no reasonably foreseeable pecuniary harm to the universities.  Although the government disagrees with Probation's conclusion, the government acknowledges that the Court has overruled the government's objections previously.  As calculated by Probation, the total offense level is 18, and the applicable Guidelines sentencing range is between 27 and 33 months.

## III.    Sentencing Recommendation and Motion Pursuant to Section 5K1.1

Khosroshahin is responsible for committing a serious offense.  Despite knowing that the scheme Singer proposed to him was wrong and initially refusing his advances, Khosroshahin gave

---

[1] In the plea agreement, Khosroshahin reserves the right to argue that the two-level increases under U.S.S.G. §§ 2S1.1(b)(2)(B) and 3B1.3 do not apply.  Dkt. 182-1 at 2.

in and corrupted the college admissions process with both fraud and bribery, and in doing so, denigrated the collegiate athletics system and student athletes that he dedicated his life to serving. Seeking to benefit himself both professionally by accepting payments to his soccer team and personally by soliciting bribe payments effectively to his pocket, he lied to his USC colleagues and breached the duty that he owed his employer.  Then, after USC fired him, he continued to facilitate the corruption of the admissions process at other universities.   Under normal circumstances, the seriousness of that offense would warrant a meaningful term of incarceration to serve the interests of specific and general deterrence, to promote respect for the law, and to adequately punish Khosroshahin, among other sentencing interests.

Nevertheless, the government submits that, under either calculation of the Sentencing Guidelines, a significant downward departure under Section 5K1.1 of the Guidelines is appropriate to reflect Khosroshahin's substantial assistance with the government's investigation, and a downward variance is appropriate to avoid unwarranted sentencing disparities and to account for the defendant's familial circumstances.

Sentences in this and related cases have ranged from probation or time served (*e.g.*, John Vandemoer) to 15 months in prison (John Wilson, who was convicted at trial for pursuing the athletic recruitment scheme for all three of his children, including by bribing Vavic, and cheating on his taxes).  Among the charged coaches and athletics administrators, the government submits that the defendant's conduct places him near the middle as to culpability.  He is more culpable than a defendant like Vandemoer, the Stanford sailing coach, who worked with Singer for only two years, accepted bribe payments only to his team and did not actually facilitate the admission of any students to Stanford, and promptly pled guilty.  And he is less culpable than a defendant like Gordon Ernst, the Georgetown tennis coach, who worked with Singer for more than a decade,

accepted more than $3 million in bribes from Singer and bribe payors unrelated to Singer's scheme, accepted nearly all of the money personally, and committed tax fraud. He is also less culpable than a defendant like Donna Heinel, the USC senior women's athletics administrator, who facilitated the admission of approximately two dozen students to USC as purported athletic recruits, lied to the USC admissions department that began to investigate her, and created fake invoices to cover-up bribe payments to a company she controlled.

Khosroshahin's prompt and complete acceptance of responsibility, genuine remorse, and critical assistance in the government's investigation and prosecution of others sets him apart from other coach defendants, with the exception of Janke.[2]  After being arrested in March 2019, Khosroshahin promptly accepted responsibility and expressed remorse, without having reviewed any of the government's evidence against him. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[2] Michael Center, the University of Texas tennis coach, is the only cooperating coach defendant that has been sentenced to date. He was sentenced to six months in prison. While Khosroshahin is more culpable than Center, who accepted a bribe (half in cash) to secure the admission of one unqualified athlete, Khosroshahin's acceptance of responsibility ████████ ███████████████████████████████████████ Further, the acceptance of responsibility exhibited by Center, who has gone on to publicly minimize his conduct and blame others after his sentencing, was not remotely akin to the genuine remorse that Khosroshahin has exhibited since his very first proffer.

██████████████████████████████.  The Court observed his testimony during the trial of Vavic, and the government respectfully submits that Khosroshahin's testimony was remorseful, truthful, consistent, and corroborated, despite hours of cross-examination, after which the jury credited his testimony.  ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

          ████████████████████████████████████████████ For example, Steven Masera and Mikaela Sanford were recently sentenced to time-served.  Khosroshahin is perhaps more culpable than defendants like Masera and Sanford because they did not have full visibility into all of the aspects of Singer's scheme, while Khosroshahin had full insight into the athletic recruitment portion of the scheme, breached the duty of loyalty he owed his employer, and accepted bribe payments effectively to his pocket.  On the other hand, Khosroshahin did not work with Singer on a near-daily basis like Masera and Sanford, and he had no involvement in the test cheating or class taking portions of the scheme.  ███████████████████████████████████████

██████████████

          The government has also considered Khosroshahin's familial circumstances, and the collateral consequences that would potentially stem from a sentence of incarceration.  *See* PSR ¶¶ 93-95.  The government respectfully submits that its recommendation of time served and one year of supervised release, to include a special condition of 100 hours of community service, balances the nature and seriousness of Khosroshahin's offense against his cooperation, sentences imposed on similarly situated defendants, and his personal history and characteristics.

6

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, the government respectfully requests that the Court sentence the

defendant to a term of imprisonment of time served, followed by one year of supervised release

with 100 hours of community service, a forfeiture money judgment of $208,990.93,[3] and a $100

special assessment.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:     <u>*/s/ Ian J. Stearns*</u>
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
IAN J. STEARNS
STEPHEN E. FRANK
Assistant United States Attorneys

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document was filed under seal with the Clerk and will be sent via
e-mail to counsel of record for the defendant and to Senior Probation Officer Martha Victoria.  I
further certify that a redacted version of the document will be filed on the public docket.

By:     <u>*/s/ Ian J. Stearns*</u>
IAN J. STEARNS
Assistant United States Attorney

---

[3] The stipulated forfeiture amount in the plea agreement is comprised of
(i) approximately $75,000 paid by Singer to Khosroshahin after he was terminated by USC, and
(ii) approximately $133,990.93 paid from Khosroshahin's soccer club bank account to
Khosroshahin after October 2012 (the date of Singer's first payment to the club account, based on
bank records available to the government).